```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
UNITED STATES OF AMERICA,            :
                                     :
          -v-                        :       21-cr-536(JSR)
                                     :
JOSPEH JAMES O'CONNOR,               :       MEMORANDUM ORDER
                                     :
          Defendant.                 :
------------------------------------ x
```

JED S. RAKOFF, U.S.D.J.

Now before the Court is a motion by defendant Joseph James O'Connor for a sentence reduction under 18 U.S.C. § 3582(c)(1), known as the "compassionate release" statute. The statute permits a court to reduce a defendant's sentence if (1) the defendant has complied with the administrative exhaustion requirement, (2) the defendant has demonstrated that extraordinary and compelling reasons warrant a sentence reduction, (3) the 18 U.S.C. § 3553(a) factors are consistent with a lesser sentence than that previously imposed, and (4) there is a particular sentence reduction consistent with the § 3553(a) factors that is warranted by extraordinary and compelling reasons. See United States v. Garcia, 505 F. Supp. 3d 328, 331 (S.D.N.Y. 2020). The Government opposes O'Connor's motion ("Gov't Opp.")(Dkt. 22). For the reasons set forth below, O'Connor's motion for compassionate release is DENIED.

## DISCUSSION

This Court sentenced O'Connor to a below-the-guidelines sentence of 60 months for his participation in a sophisticated SIM swap scheme[1] during which O'Connor and his co-conspirators stole a large amount of cryptocurrency that they then extensively laundered to cover up their crimes. (Dkt. 17 at 33). Additionally, O'Connor also took part in hacking of approximately 130 social media accounts, including those belonging to publicly known figures and young victims, the contents of which he and his associates used in elaborate and damaging extortion schemes. For example, in one instance, O'Connor first threatened a juvenile victim with physical and sexual violence and later pretended to be the victim and publicly threatened to commit criminal acts, including murders and mass-shootings, using the victim's hacked phone SIM. In a different case, he and his co-conspirators stole nude photographs from the hacked social media account of a victim, with which he then extorted the victim.

For this conduct, O'Connor is serving his sentence in the Federal Correctional Institute ("FCI") Allenwood Low and is

---

[1] In essence, a SIM card swap scheme "causes a phone carrier to switch a victim's phone number over to a SIM card that the scheme participant or a co-conspirator controls. By doing so, the scheme participant is able to receive messages intended for the victim, which the scheme participant may then use to, among other things, reset passwords on, and access, accounts held by the victim, such as email and bank accounts." Gov't Opp. at 2.

scheduled to be released on May 12, 2025. Government's Opposition at 5 (Gov't Opp. at 5). In his motion, O'Connor presents a medley of purported grounds for compassionate release, viz., (i) his non-citizenship status, which makes him ineligible for various BOP programs, including early release to a halfway house or home confinement; (ii) the harsh conditions at the Metropolitan Detention Center, where O'Connor had been held before being transferred to FCI Allenwood Low; (iii) the purportedly harsh treatment at FCI Allenwood Low resulting principally from the prison's restrictions on O'Connor's phone usage, which causes him hardship because of his autism; (iv) O'Connor's youth at the time of his offense conduct; (v) unwarranted sentencing disparities; (vi) O'Connor's family circumstances, particularly the hardships experienced by O'Connor's mother as a result of O'Connor's incarceration; and (vii) the November 1, 2023 amendment to the U.S. Sentencing Guidelines (the "Guidelines" or "U.S.S.G."), which O'Connor argues would result in a two-level reduction to his offense level pursuant to U.S.S.G. ¶ 4C1.1.

Although O'Connor has satisfied the administrative exhaustion requirement, his motion nevertheless fails because he does not meet his "burden of showing that the circumstances warrant that decrease." United States v. Jones, 17 F. 4th 371, 375 (2d Cir. 2021) (per curiam)(citation omitted). The Sentencing Commission

identified several circumstances that present extraordinary and compelling reasons justifying release, including where (1) the defendant is suffering from a terminal illness or serious medical condition; (2) the defendant is at least 65 years old, experiencing a serious deterioration in physical or mental health because of aging, and has served at least 10 years or 75 percent, whichever is less, of his term of imprisonment; or where (3) the defendant must serve as a caregiver for minor, a partner, or a parent (where the defendant would be the only available caregiver). U.S.S.G. § 1B1.13. O'Connor's ineligibility for certain BOP programs as a non-citizen, the harsh conditions that he temporarily experienced while detained at the Metropolitan Detention Center, or his present alleged hardships at FCI Allenwood Low that consist of restrictions on his use of telephone and lack of support for his autism, do not come close to the degree of "gravity" required to demonstrate extraordinary or compelling circumstances. See id. § 1B1.13(b)(5). Autism is not a terminal illness and as O'Connor himself admits, the FCI Allenwood has increased his permitted usage of phone over time. O'Connor Motion ("Mot."), Ex. 2 at 20. And in any case, deprivation of benefits to which a prisoner is not entitled as a matter of law and his complaints about general harshness of prison conditions are generally insufficient to sustain a showing of extraordinary or compelling

circumstances. Further, this Court already considered O'Connor's "relative youth," his status as a non-citizen, and his autism in the imposition of the below-the-guidelines sentence. (Dkt. 17 at 31-39). A compassionate release motion "is not an opportunity to second guess or to reconsider the sentencing court's original decision." United States v. Roney, 833 F. App'x 850, 854 (2d Cir. 2020) (citation and internal quotation marks omitted).

The Court also concludes that no sentencing disparity exists between O'Connor and similarly situated defendants. See 18 U.S.C. § 3553(a)(6). O'Connor points to a handful of cases relating to defendants who perpetrated white-collar offenses and received a shorter sentence, even though they had inflicted a higher financial loss or impacted more victims, to argue that a 60-month sentence unwarranted in this case. Mot., Ex. 2 at 37-38. However, O'Connor's case differs markedly from an ordinary white-collar case where the defendant inflicted predominantly financial loss on the victims. Unlike defendants in those cases, O'Connor engaged in elaborate schemes to threaten, harass, and ruin lives of particularly young victims. Next, O'Connor's invocation of the November 1, 2023, Guidelines amendment, U.S.S.G. § 4C1.1, which allows a court to reduce the offense level for a defendant with zero criminal history, is also inapplicable because O'Connor used "credible threats of violence in connection with the offense." See U.S.S.G.

5

§ 4C1.1(a)(3). Finally, the psychological hardship that O'Connor's incarceration caused to his mother is neither extraordinarily nor compelling. In fact, the mental anguish and hardship to families is one of the most commonplace and regrettable consequences of many, if not most, defendants' illegal actions. Finally, the Court also notes that these hardships will be soon alleviated by O'Connor's impending release scheduled for May of 2025, and that any earlier release would not serve the need to provide just punishment for the serious offenses that O'Connor committed.

Accordingly, defendant's motion is hereby denied. The Clerk is directed to close the motion (Dkt. 23).

SO ORDERED.

Dated:   New York, NY
         February 4, 2025

_____
JED S. RAKOFF, U.S.D.J.